IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JENNIFER JACOBSEN,          : Civil No. 1:25-CV-303
                            :
    Plaintiff,              :
                            :
        v.                  :
                            : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,            :
Commissioner of Social Security,[1] :
                            :
    Defendant.              :

## MEMORANDUM OPINION

## I.   Introduction

Jennifer Jacobsen filed an application under Titles II and XVI of the Social Security Act for disability and disability insurance benefits and supplemental security income on July 7, 2022. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Jacobsen was not disabled from her alleged onset date of August 31, 2021, through April 10, 2024, the date of the ALJ's decision.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Bisignano is substituted as the defendant in this suit.

Jacobsen now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[2] we conclude that substantial evidence supports the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.     Statement of Facts and of the Case

Jennifer Jacobsen filed for disability and disability insurance benefits, as well as supplemental security income, alleging disability due to an aortic valve replacement, pace maker, heart issues since infancy, calcium buildup in her shoulders, migraines, low platelets, and issues with her cervical spine.[3] Jacobsen was 50 years old at the time of her amended alleged onset of disability and had no past relevant work.[4]

---

[2] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[3] Tr. 66.
[4] Tr. 35.

2

The medical record regarding Jacobsen's impairments[5] revealed that Jacobsen treated for headaches and thrombocytopenia prior to the amended onset date of disability.[6]  In August of 2021, Jacobsen had an oncology follow up appointment, at which time she complained of joint pain.[7]  It was noted that her thrombocytopenia was asymptomatic.[8] Jacobsen was seen by Certified Registered Nurse Practitioner ("CRNP") Gabriela Hogan in October for her annual examination.[9]  Jacobsen reported she was in good health and was completing daily home workouts and gardening.[10]  CRNP Hogan noted Jacobsen's chronic numbness and tingling in her bilateral arms, but Jacobsen did not want medications at that time.[11]  A physical examination revealed normal range of motion, a negative Phalen's test, and numbness and tingling in fingers after raising

---

[5] While we have considered the records that pre-date the amended onset date of disability, our discussion focuses primarily on the records relevant to the alleged disability period.

[6] Tr. 2060, 2065.

[7] R. 2055.

[8] Tr. 2058.

[9] Tr. 2052-53.

[10] Tr. 2053.

[11] *Id.*

3

her arms above her head for one minute.[12]  Hogan ordered an x-ray of Jacobsen's cervical spine.[13]  Hogan also noted Jacobsen's history of two prior heart surgeries and a chronic murmur and advised her to consider a cardiology consultation.[14]

In December of 2021, Jacobsen was diagnosed with severe aortic stenosis, and she underwent an aortic valve replacement.[15]  She also required a post-operative pacemaker placement due to a heart block.[16] She was discharged in stable condition after roughly one week in the hospital.[17]  At a two-week follow up appointment in January of 2022, Jacobsen reported she was doing well and planned to start cardiac rehabilitation.[18]

In April, Jacobsen complained of dizziness and fatigue after she tried to do yardwork.[19]  At a later visit in April, Jacobsen reported arm

---

[12] Tr. 2054.
[13] Tr. 2055.
[14] Tr. 2054.
[15] Tr. 725
[16] Tr. 665-66.
[17] Tr. 669.
[18] Tr. 1953.
[19] Tr. 1937.

and shoulder pain, as well as weakness, that made her daily activities difficult.[20]    It was noted that Jacobsen's migraines had decreased significantly since starting Topamax.[21]    Regarding her shoulder pain, Jacobsen reported worsening pain that radiated down her bilateral arms.[22]  A physical examination revealed decreased range of motion in both shoulders and an inability to reach behind her.[23]  CRNP Hogan ordered an x-ray, noting that she suspected adhesive capsulitis due to the heart surgery and recommended a course of physical therapy.[24] Jacobsen's migraines were noted to be stable on Topamax.[25]  The x-ray of Jacobsen's shoulders revealed adhesive capsulitis.[26]

Jacobsen began physical therapy in April and reported trouble reaching overhead and behind her back.[27]  She exhibited limited range of motion and impaired physical strength, which she reported decreased her

---

[20] Tr. 1934.
[21] *Id.*
[22] Tr. 1935.
[23] Tr. 1935-36.
[24] Tr. 1936.
[25] *Id.*
[26] Tr. 2242-43.
[27] Tr. 1931.

abilities to perform activities of daily living.[28]  At a follow up appointment with CRNP Hogan in June, Jacobsen reported that physical therapy was decreasing her overall pain.[29]  Hogan assessed that the chronic adhesive capsulitis was improving and advised her to continue with physical therapy.[30]  In July, it was noted that Jacobsen missed a therapy appointment due to sore shoulders after helping her father move.[31]

Physical therapy notes from August and September of 2022 indicate that Jacobsen was still experiencing pain and decreased range of motion, but that therapy was slowly improving her condition.[32]  During this time, treatment notes indicated that Jacobsen engaged in activities such as gardening and household chores.[33]  By October, Jacobsen completed physical therapy but reported that her condition did not totally improve, as she still had limited range of motion.[34]  She declined injections or a prednisone taper at this visit, and she was advised to consult with

---

[28] Tr. 1932.
[29] Tr. 1925.
[30] Tr. 1926.
[31] Tr. 2437.
[32] Tr. 2412
[33] Tr. 2418, 2432.
[34] Tr. 2410.

orthopedics.[35]    In November, Jacobsen continued to report difficulty reaching overhead, and her provider encouraged her to move and stretch more frequently but noted that injections or surgery could be an option in the future.[36]

In April of 2023, Jacobsen presented for her annual examination and follow up for her migraines and complaints of dizziness.[37]    Her migraines were noted to be stable with medications, and she inquired about medical marijuana for complaints of anxiety.[38]  Jacobsen was noted to have low blood pressure, which CRNP Hogan explained was likely the cause of her dizzy spells and advised her to change positions slowly.[39] However, Jacobsen did not want to take blood pressure medications.[40]

In June, Jacobsen continued to complain of dizziness and reported several episodes during which she felt a spinning sensation and lack of balance.[41]    She also reported daytime fatigue and numbness in her

---

[35] Tr. 2411.
[36] Tr. 2401, 2403.
[37] Tr. 2940.
[38] Tr. 2941.
[39] *Id.*
[40] *Id.*
[41] Tr. 2645.

hands.[42]  A physical examination at this visit was unremarkable.[43]  She further denied chest pain, shortness of breath, syncope, or leg swelling, and it was noted her symptoms were consistent with vertigo.[44]  She was also referred to a sleep study for suspected sleep apnea, as well as to neurology for her complaints of numbness.[45]  At a cardiology follow up in October, it was noted that Jacobsen never contacted neurology for a consultation.[46]

CRNP Hogan filled out a physical residual functional capacity assessment for Jacobsen in December of 2023.[47]  Hogan opined that Jacobsen could occasionally lift less than 10 pounds; could sit for four hours and stand and/or walk for two hours in an eight-hour workday; would need to alternate sitting and standing; had no postural limitations; and was limited to occasional reaching overhead with both upper extremities but not limited in reaching any other direction.[48]

---

[42] *Id.*
[43] Tr. 2647-48.
[44] Tr. 2649.
[45] *Id.*
[46] Tr. 2676.
[47] Tr. 3077-79.
[48] *Id.*

8

It is against the backdrop of this record that an ALJ held a hearing on Jacobsen's disability application on January 30, 2024.[49] Jacobsen and a Vocational Expert ("VE") both appeared and testified at this hearing.[50] Following this hearing, on April 10, 2024, the ALJ issued a decision denying Jacobsen's application for disability benefits.[51] The ALJ first concluded that Jacobsen had not engaged in substantial gainful activity since her alleged onset date of August 31, 2021.[52] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Jacobsen suffered from severe impairments of aortic valve stenosis status post mechanical aortic valve replacement and pacemaker placement; adhesive capsulitis; and cervical retrolisthesis.[53] At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[54]

Between Steps 3 and 4, the ALJ then concluded that Jacobsen:

---

[49] Tr. 43-64.
[50] *Id.*
[51] Tr. 22-42.
[52] Tr. 27.
[53] *Id.*
[54] Tr. 29-30.

[H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional balance, stoop, crouch, kneel, climb ramps and stairs, but never on ladders ropes or scaffolds; never crawl; occasional overhead reaching bilaterally, frequent other directions; limited to frequent exposure to temperature extremes of cold and heat, wetness, humidity, fumes, odors, dusts gases and poor ventilation, vibrations, and hazards including moving dangerous machinery and unprotected heights; must have the option to transfer positions with stand and walk intervals up to 30 minutes at a time, no limitation on sitting, not off tasks when transferring.[55]

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Jacobsen's reported symptoms. With respect to the medical opinion evidence, the ALJ considered the opinions of the state agency consultants, Drs. Manganiello and Cuozzo, and found these opinions generally persuasive.[56] These providers opined that Jacobsen could perform a range of light work, including certain reaching limitations.[57] Specifically, these providers found that Jacobsen could occasionally reach overhead and in different directions with her right upper extremity and

---

[55] Tr. 30-31.

[56] Tr. 34.

[57] Tr. 72-76, 98-103.

frequently with her left.[58]  The ALJ found these particular limitations not entirely persuasive.[59]  Rather, the ALJ specifically found CRNP Hogan's limitation to occasional overhead reaching but no restrictions in reaching other directions to be more consistent with the record evidence, which showed improvement in Jacobsen's shoulder functioning.[60]  Thus the ALJ reasoned that she limited Jacobsen to occasional overhead reaching but frequent reaching in all other directions.[61]

With respect to the remainder of CRNP Hogan's opinion, the ALJ found this opinion partially persuasive.[62]  The ALJ again reiterated that the opinion's reaching limitations were consistent with Hogan's own treatment notes and other medical evidence in the record.[63]  However, the ALJ found Hogan's more restrictive sitting, standing, walking, and lifting limitations to be inconsistent with the longitudinal medical record,

---

[58] *Id.*
[59] Tr. 34.
[60] *Id.*
[61] *Id.*
[62] Tr. 35.
[63] *Id.*

11

which included improvements with treatment, and with the state agency consultants' opinions.[64]

With respect to Jacobsen's symptoms, the ALJ found that Jacobsen's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence.[65] Jacobsen testified that she could not work due to her history of heart surgeries, loss of energy, adhesive capsulitis, numbness in her arms, and dizziness.[66] While she testified she experienced lower back pain, she reported that she did not receive treatment.[67] She further reported issues with her neck, which she treated with physical therapy.[68] Jacobsen also testified to her history of migraines, which she reported were well controlled with medication.[69] She further reported doing household chores but pacing herself due to her pain.[70]

---

[64] *Id.*
[65] Tr. 31-34.
[66] Tr. 48-50.
[67] TR. 52.
[68] Tr. 54.
[69] Tr. 58.
[70] Tr. 59.

The ALJ ultimately found Jacobsen's testimony to be inconsistent with the objective clinical findings.[71]  The ALJ recounted the objective medical evidence, including unremarkable physical examinations as well as the documented symptoms of decreased range of motion and pain in Jacobsen's bilateral shoulders.[72]  She also noted the records that indicated Jacobsen's pain and range of motion improved with treatment, including physical therapy.[73]  The ALJ further noted that Jacobsen declined to follow some of the recommendations of her providers, such as orthopedic and neurology referrals, and that she was encouraged by her providers to be more active.[74]  Finally, the ALJ considered Jacobsen's activities of daily living, which included light housework and yardwork during the relevant period.[75]  Ultimately, the ALJ concluded that Jacobsen was not as limited as she alleged.

Having made these findings, the ALJ found at Step 4 that Jacobsen had no past relevant work but found at Step 5 that she could perform the

---

[71] Tr. 31-34.

[72] Tr. 31-34.

[73] *Id.*

[74] Tr. 32.

[75] Tr. 33.

occupations of an order caller, office helper, and assembler of electrical accessories.[76] Accordingly, the ALJ found that Jacobsen had not met the stringent standard prescribed for disability benefits and denied her claim.[77]

This appeal followed. On appeal, Jacobsen argues that the ALJ's decision is not supported by substantial evidence because he failed to limit her to occasional reaching and failed to adequately consider her symptoms. This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[78] Substantial

---

[76] Tr. 36.

[77] Tr. 37.

[78] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

14

evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[79] Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[80]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[81] However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[82] The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[83]

---

[79] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[80] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[81] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[82] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[83] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[84]   Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[85]   Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[86]

---

[84] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[85] *Id.*

[86] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[87]  Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings.  In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[88]  This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[89]   Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[90]

---

[87] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).
[88] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[89] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[90] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[91]  This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[92]  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[93]

---

[91] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).
[92] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[93] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation.[94]    The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[95]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[96]  In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[97]  Our review of the ALJ's determination of the plaintiff's RFC

---

[94] 20 C.F.R. §§404.1520(a), 416.920(a).

[95] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

[96] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[97] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

is deferential, and that determination will not be set aside if it is supported by substantial evidence.[98]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[99]  If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[100]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination.  While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of

---

[98] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[99] *Mason*, 994 F.2d at 1064.

[100] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

determining an RFC."[101]    Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[102]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision.    Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[103] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination.    On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based

---

[101] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

[102] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

[103] *Biller*, 962 F. Supp. 2d at 778–79.

upon all the facts and evidence.[104]    Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[105]

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[106]  Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[107]  Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[108]  The consistency

---

[104] *See Titterington,* 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.

[105] *Burns,* 312 F.3d 113.

[106] 20 C.F.R. § 404.1520c(c).

[107] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi,* 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

[108] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[109]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[110]  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[111]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[112]   On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[113]

---

[109] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[110] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

[111] *Mason*, 994 F.2d at 1066.

[112] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

[113] *Cummings*, 129 F. Supp. 3d at 214–15.

D. <u>Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms</u>

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations.[114]  Our review of those determinations is deferential.[115]  However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible."[116]  An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence."[117]  As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them."[118]

---

[114] *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir. 2009).

[115] *Id.*

[116] *Zirnsak v. Colvin,* 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted).

[117] *McKean v. Colvin,* 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted).

[118] *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms.[119]  Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record.[120]

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.[121]  During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated considering the entire case record.[122]  This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions

---

[119] 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p.
[120] SSR 16-3p.
[121] 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p.
[122] 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.[123]

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings.[124] Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms.[125] These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations.[126]

---

[123] *Id.*
[124] SSR 16-3p.
[125] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).
[126] *Id.*

26

### E. The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[127] Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

The plaintiff first asserts that the ALJ's decision is not supported by substantial evidence because the RFC limited her to occasional overhead reaching and frequent reaching in other directions, rather than occasional reaching in all directions.[128] Jacobsen asserts that the medical evidence supported a limitation to occasional reaching, and that the ALJ failed to explain her rationale for the limitation to frequent reaching.[129] She further argues that this error requires remand because a limitation

---

[127] *Biestek*, 139 S. Ct. at 1154.
[128] Doc. 16 at 7-10.
[129] *Id.*

to occasional reaching would have eroded the occupations identified by the VE at the hearing.[130]

We find this argument particularly unavailing, as the ALJ's decision clearly and explicitly explained why the ALJ limited Jacobsen to occasional overhead reaching and frequent reaching in other directions. The decision first recounted the medical records concerning Jacobsen's shoulder impairments, including the findings of decreased range of motion and difficulty raising her arms. The ALJ also noted treatment records that indicated physical therapy was improving Jacobsen's condition. Further, the ALJ discussed the medical opinions and explained why she adopted certain limitations regarding Jacobsen's reaching capabilities. She explained that the state agency consultants' opinions were not entirely persuasive, but that she found CRNP Hogan's limitations to be supported by Hogan's treatment notes and the remainder of the objective evidence.[131] Thus, the ALJ's decision clearly

---

[130] *Id.*

[131] The plaintiff's argument that no medical opinion supports the RFC's reaching limitations is particularly disingenuous, since it was the plaintiff's own treating provider, CRNP Hogan, that opined that

28

explains the basis for these reaching limitations and is supported by the medical evidence in the record. While the plaintiff appears to rely on her subjective symptoms to demonstrate that she was more limited, as we will explain, the ALJ found the plaintiff's testimony not entirely credible. Accordingly, we find no error with the ALJ's RFC limitation.

Further, the plaintiff's contention that a limitation to occasional reaching would have eroded the occupations identified by the VE is explicitly belied by the hearing transcript. The ALJ posed two light work hypotheticals to the VE that included the limitation to occasional overhead reaching and frequent reaching in other directions, and the VE identified three occupations that the individual could perform, including an order caller, merchandise marker, and cafeteria attendant.[132] After posing an additional hypothetical requiring a sit/stand option, the VE testified that only the order caller position remained but identified other light work jobs that were available, such as an office helper and electrical

---

Jacobsen could occasionally reach overhead but had no limitations in reaching other directions.

[132] Tr. 61.

29

accessories assembler.[133] The ALJ then asked if those occupations would remain if the individual was limited to occasional lateral and forward reaching with the right upper extremity, to which the VE responded those jobs would remain.[134] While the plaintiff points out that the three jobs identified requiring "frequent reaching" in the DOT's definition, the VE further explained at the hearing that the DOT does not address overhead reaching or reaching certain directions, and that the testimony was based on her experience.[135] Counsel did not ask any questions of the VE or object to the VE's experience.

Given this testimony by the VE, we find the plaintiff's argument regarding her reaching limitations to be wholly without merit. Accordingly, because we find no error with the RFC determination, a remand is not required.

The plaintiff also contends that the ALJ erred in evaluating her subjective testimony by relying on her ability to perform some daily activities, improvement in her symptoms with treatment, and her

---

[133] Tr. 61-62.
[134] Tr. 62.
[135] Tr. 63.

providers' recommendations to stay active.[136]  At the outset, we note that

a claimant's daily activities and effects of treatment are factors that,

pursuant to the regulations, are relevant to the ALJ's consideration of a

claimant's symptoms.[137]    Moreover, as we have explained, the ALJ

thoroughly discussed and considered the objective medical evidence from

the relevant period, including the medical opinion evidence, which

indicated Jacobsen's impairments improved with treatment.  While the

plaintiff would have us reweigh the evidence in her favor, we are

prohibited from doing so.[138]

Given that the ALJ considered all the evidence and adequately

explained the decision for including or discounting certain limitations as

established by the evidence, we find no error with the decision.

Therefore, under the deferential standard of review that applies to

---

[136] Doc. 16 at 11-14.

[137] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also, e.g.*, *Russo v. Astrue*, 421 F. App'x 184, 190 (3d Cir. 2011) (finding no error where the ALJ considered the claimant's activities of daily living and found the claimant not entirely credible) (nonprecedential); *Skapely v. Colvin*, 2015 WL 7351583, at *12 (M.D. Pa. Nov. 20, 2015) (affirming decision where the ALJ considered effectiveness of treatment to conclude the claimant was less than credible).

[138] *Zirnsak*, 777 F.3d at 611.

31

appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision will be affirmed.

## IV.    Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 27th day of February 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge
